UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


**CARLOS A. McGREW (#413135)**                         **CIVIL ACTION**

**VERSUS**

**DR. JONATHAN ROUNDTREE, ET AL.**                     **NO. 09-0859-RET-CN**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, March 9, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CARLOS A. McGREW (#413135)                                CIVIL ACTION

VERSUS

DR. JONATHAN ROUNDTREE, ET AL.                            NO. 09-0859-RET-CN

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Summary Judgment, rec.doc.no. 80. This motion is opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Msgt. Huey Pidgeon, Capt. Marks Allen, Lt. Joseph Russell, Msgt. Greg Eirick, Dr. Jonathan Roundtree, E.M.T. Aurielle Boeker, E.M.T. Mike Thomas, and E.M.T. Anthony McCoy, complaining that the defendants violated his constitutional rights on April 1, 2009, through excessive force on that date and through deliberate indifference to his serious medical needs thereafter. Pursuant to earlier Magistrate Judge's Report in this case, approved by the District Judge on August 24, 2010, see rec.doc.nos. 82 and 121, the plaintiff's claims for monetary damages asserted against the defendants in their official capacities have been dismissed.

The defendants now move for summary judgment, relying upon the pleadings, a Statement of Uncontested Facts, certified copies of excerpts from the plaintiff's medical records, and the affidavit of defendant Jonathan Roundtree, together with a copy of defendant Roundtree's Curriculum Vita.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex

Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. Anderson, supra. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, supra. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. Little, supra, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. International Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257 (5th Cir. 1994), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

In his Complaint, as amended, the plaintiff asserts that on April 1, 2009, defendants Pidgeon, Allen, Russell and Eirick conducted a cell entry in order to remove the plaintiff from his cell. The plaintiff asserts that when the defendants entered his cell, he offered no resistance or provocation, but the defendants nonetheless "brutally attacked & beat" him while he was "curled up into a fetal-like position". The plaintiff further complains that after the defendants placed him in

restraints, they continued to beat him, and one member of the cell-entry team allegedly utilized a wooden baton in an attempt to "'sodomize' plaintiff through his jumpsuit" while another member "grabbed/yanked on his genitals". The plaintiff was then dragged from his cell and transported to the prison infirmary where defendant E.M.T. Boeker refused to provide medical treatment and instead urged the plaintiff to sign a form refusing such treatment. After the plaintiff was returned to his cell, he attempted for the next two days to obtain medical attention but was refused by defendants Thomas and McCoy. Finally, on the evening of April 3, 2009, the plaintiff was examined by an unidentified health care provider, at which time he was provided with x-rays and pain medication and was interviewed by an investigator regarding his claim of sexual assault. Notwithstanding, the plaintiff was charged with a disciplinary violation for having falsely accused security officers of committing a sexual assault. In addition, when the plaintiff attempted to obtain further medical treatment after that date, through requesting such treatment from defendants Thomas and McCoy during their daily rounds, and thereafter through correspondence addressed to defendant Roundtree, his requests were ignored and/or refused. Accordingly, it was not until May 13, 2009, almost six weeks after the incident complained of, and after he felt compelled to go on a hunger strike in order to obtain attention, that he was finally provided with medical treatment by Dr. Roundtree. At that time, a review of the x-rays ordered on April 3, 2009, revealed that the plaintiff had sustained a fractured bone in his right foot. The plaintiff further complains that he suffered injuries to his lower back during the cell-entry and that Dr. Roundtree made a referral on April 13, 2009, for the plaintiff to be seen by an orthopedic specialist, but that this referral has never taken place.

In response to the plaintiff's allegations, the defendants contend that they are entitled to qualified immunity in connection with the

plaintiff's claims.  Specifically, they contend that the plaintiff has failed to make sufficient allegations of conduct on their part which rises to the level of a violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.  Hale v. Townley, 45 F.3d 914 (5th Cir. 1995).  As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.  Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted.  Id.  In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because he has failed to allege facts in the Complaint which would support a finding that they participated in any violation of his constitutional rights.[1]

Initially undertaking the qualified immunity analysis with respect to the plaintiff's claim of excessive force asserted against defendants

---

[1] The United States Supreme Court has recently held that rigid chronological adherence to the Saucier two-step methodology is no longer mandatory.  Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  Although the Saucier methodology will be "often beneficial", the Callahan Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

Pidgeon, Allen, Russell and Eirick, the Court concludes that the defendants' motion should be denied, and that the plaintiff's allegations are sufficient at this stage of the proceedings to overcome the assertion of qualified immunity.

Force is excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); <u>Whitley v. Albers</u>, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Not every malevolent action by a prison guard, however, gives rise to a federal cause of action. The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." <u>Hudson v. McMillian</u>, <u>supra</u>. While an inmate-plaintiff need not show a significant injury to prevail on a claim of excessive force, a necessary element of an excessive force claim is proof of some injury resulting from the use of such force. <u>Knight v. Caldwell</u>, 970 F.2d 1430 (5th Cir. 1992), <u>cert. denied</u>, 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993). Factors to be considered in determining whether the use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. <u>Hudson v. McMillian</u>, <u>supra</u>. In addition, a defendant security officer may be found responsible for failure to intervene and take reasonable measures to protect an inmate from another officer's excessive use of force. The test is whether the observing officer had actual knowledge of a

substantial risk of harm to the inmate yet disregarded that risk and failed to take reasonable measures to prevent the resulting harm. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Applying the foregoing standard, the Court finds that there are disputed questions of material fact which preclude the grant of summary judgment in connection with this issue. The sole evidence introduced by the defendants which the Court determines it may consider in connection with the defendants' motion is the affidavit of defendant Dr. Roundtree and certified copies of excerpts from the plaintiff's medical records.[2] These records reflect that although the plaintiff purportedly refused medical treatment on the date of the incident, April 1, 2009, he apparently exhibited, two days later, "multiple bruises to [right] posterior lateral chest wall and various [indecipherable] bruises to arms and legs [and] [m]oderate swelling to [right] foot." These records further indicate that x-rays taken of the plaintiff's foot on that date

---

[2] Although the defendants have filed responses to the plaintiff's Interrogatories and Requests for Admissions, the defendants have not explicitly relied upon these responses as exhibits in connection with their motion for summary judgment. Further, the responses to the plaintiff's Interrogatories are unsworn in any event, and although the responses to the plaintiff's Requests for Admissions are in fact sworn, these responses, being as they are principally denials of the plaintiff's characterization of events, do not provide sufficient information for reliance upon by the Court. In addition, the defendants have not explicitly relied upon the plaintiff's administrative remedy proceedings as an exhibit in support of their motion for summary judgment. And in any event, the Court is inclined to view the incident reports and other documents contained therein, which were prepared by security officers who faced potential liability as defendants, as self-serving and as being inherently untrustworthy, and so as inadmissible hearsay, not subject to the hearsay exceptions set forth in Rules 803(6) and 803(8) of the Federal Rules of Evidence. See Bracey v. Herringa, 466 F.2d 702 (7th Cir. 1972) (finding error in district court's reliance on prison records in support of summary judgment, which records included the self-serving statements of the defendant security officers who were subject to potential liability in connection with the plaintiff's claim of excessive force), relying upon Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). See also Pommer v. Vaughn, 2009 WL 1490570 (D. Conn., May 27, 2009) ("[C]ourts examining incident reports in excessive force cases have found such reports to be inadmissible under Rule 803(6) because they are self-serving and lack indicia of reliability.").

revealed (although not apparently disclosed to the plaintiff until six weeks later on May 14, 2009) that he had in fact sustained a broken bone in his right little toe.[3] Although the defendants rely upon the assertedly minor extent of these injuries to argue, in accordance with the affidavit of Dr. Roundtree, that "[h]ad such force occurred as alleged by this plaintiff, there would be physical medical evidence of severe injuries, such as broken bones of the femur, tibia, knee cap, fingers, forearm, wrists, ankle or such injuries as a herniated disc, fractured skull, or torn flesh," it is clear that the absence of severe injuries is not alone determinative of the plaintiff's claim. A recent decision of the United States Supreme Court makes clear that it is not the degree of injury which determines the viability of a claim of excessive force, but rather whether the force was "applied maliciously and sadistically to cause harm", thereby offending "contemporary standards of decency". Wilkins v. Gaddy, ___ U.S. ___, 130 S.Ct. 1175 (2010), citing Hudson v. McMillian, supra. Although "the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation," and "may also provide some indication of the amount of force applied", an inmate who has been subjected to the gratuitous use of force by prison officials "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Id. In the instant case, the plaintiff alleges in his sworn Amended Complaint that the defendants entered his cell and, although he offered no resistance, proceeded to brutally beat him while he lay curled on the floor, and allegedly continued to beat him after he

---

[3] The x-ray report indicates that although the x-rays were taken on April 3, 2009, the report was not dictated until April 11, 2009, and according to the plaintiff, he was not advised that he had sustained a broken toe until May 14, 2009.

was cuffed with his hands behind his back. The defendant members of the cell-entry team have not provided their own affidavits to the Court attesting to their respective versions of the events of April 1, 2009. As a result, there is nothing before the Court regarding the events preceding or during the referenced cell-entry or regarding the alleged motivations of the members of the cell-entry team. On this showing, or lack thereof, and based on the standard set forth in the Wilkins case, supra, the Court finds that there are disputed issues of material fact which preclude the grant of summary judgment as to the claim of excessive force.[4]

Turning to the plaintiff's claim of deliberate medical indifference asserted against defendants Dr. Jonathan Roundtree and E.M.T.s Mike Thomas, Anthony McCoy and Aurielle Boeker, the Court finds, in contrast to the plaintiff's claim of excessive force, that the plaintiff's allegations, juxtaposed against the evidence produced by the defendants in support of their motion, are insufficient to support his claim asserted against the defendants. In this regard, the Eighth Amendment to the United States Constitution prohibits only the wanton infliction of pain. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim under the Eighth Amendment of improper or

---

[4] The Court does not deem it appropriate to treat the plaintiff's claim of an alleged sexual assault occurring during the cell-entry as a separate and distinct claim of excessive force, independent of other force utilized during the incident. It is undisputed that all force utilized against the plaintiff on April 1, 2009, occurred during the single operation of entering the plaintiff's cell and placing him in restraints on that date. The sole relevance of the alleged sexual nature of the assault, therefore, if any, will be as to whether the force utilized against him was of a sort "repugnant to the conscience of mankind." See Copeland v. Nunan, 250 F.3d 743 (5th Cir. 2001), citing Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 2000), and Boddie v. Schnieder, 105 F.3d 857 (2nd Cir. 1997). Even the plaintiff admits that the alleged attempt by the defendants to insert a baton into his rectum was unsuccessful and that, as a result, the damage done was "only minimal in comparison", causing pain in and around the anal cavity and difficulty using the bathroom. See rec.doc.no. 95.

inadequate attention to medical needs, a prisoner must assert both that appropriate care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, supra; Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985). Whether the plaintiff received the treatment or accommodation that he feels he should have is not the issue. Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981). Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, as stated in Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." A delay in treatment does not constitute an Eighth Amendment violation without both deliberate indifference and a resulting substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

Although the plaintiff complains of the denial of medical care in this case, he acknowledges that he was transported to the prison infirmary after the cell-entry occurred on April 1, 2009, and although he asserts that the medical technician, defendant Boeker, refused to provide treatment at that time, the medical records from that date reflect that the plaintiff voiced no complaints to defendant Boeker and refused to respond when questioned about his injuries. Although mild redness was noted to the plaintiff's right forearm, no other objective symptomatology was observed inasmuch as the plaintiff apparently refused to remove his jumpsuit to be examined. When questioned by the physician, Dr. Roundtree, on that date, the plaintiff "turn[ed] his head and [did] not respond." As a result, no treatment was provided. Two days later, in any event, it appears clear that the plaintiff was again transported to the prison infirmary. At that time, the plaintiff submitted to an

examination, and this examination revealed multiple bruises to the plaintiff's chest wall, arms and legs, and moderate swelling to his right foot. In response, defendant Roundtree provided the plaintiff with pain medication and with diagnostic testing in the form of x-rays of the plaintiff's rib cage and right foot.[5] Although the plaintiff complains that during the two (2) days preceding this treatment and for six (6) weeks thereafter, defendants Thomas and McCoy ignored the plaintiff's many requests for medical care, the evidence does not bear this out. Specifically, while the plaintiff asserts that he submitted many sick call request forms to these two defendants, he has not provided the Court with copies of any such requests, and it appears that he could have done so inasmuch as the form itself is a multi-part document which includes a detachable part made available for the inmate to retain for his records. Nor has the plaintiff provided, with one exception, copies of any of the correspondence which he allegedly sent to Dr. Roundtree during this time in an effort to obtain medical treatment.[6] And even if the plaintiff did forward such correspondence to Dr. Roundtree, there is no reason to conclude that the defendant received this correspondence or made note of it, particularly inasmuch as the defendant oversees the medical department of a prison housing more than 5,000 inmates. Further, it appears from medical request forms which _are_ included in the

---

[5] Although the plaintiff asserts that Dr. Roundtree did not see him on either April 1 or April 3, 2009, the medical records generated on both dates reflect that Dr. Roundtree's signature appears thereon, and in any event, it appears clear that on the latter date, a physician (presumably Dr. Roundtree in light of the referenced signature) ordered x-rays and prescription pain medication which may only be ordered by a licensed physician, and not by a medical technician.

[6] The only copies of correspondence provided by the plaintiff which predate May 13, 2009, is a letter addressed by him to the mental health department on April 4, 2009, which makes no mention of any denial of medical attention by the defendants, a letter addressed to Warden Burl Cain dated April 14, 2009, and a letter addressed to defendant Dr. Roundtree dated April 22, 2009. See attachments to rec.doc.nos. 20 and 44.

plaintiff's medical records that he was evaluated by defendant Thomas on May 10, 2009 (apparently in connection with a hunger strike), and that a physical examination at that time was noted to be unremarkable and that the plaintiff voiced no complaints. In addition, the plaintiff was apparently evaluated by defendant McCoy on May 11, 2009, and again a physical examination was unremarkable. On both occasions, the plaintiff was advised to seek further treatment "p.r.n.", i.e., only as needed. Finally, the medical records reflect that commencing on April 10, 2009, the plaintiff was seen on multiple occasions by health care providers working with the prison's mental health program, and he apparently never voiced any complaint to these providers regarding an alleged denial of medical treatment by the defendants. Specifically, he was seen by social workers and/or by the prison psychiatrist on April 10, April 13, April 21, May 5, and May 11, 2009, and the records from these visits reflect no such complaints. These records, therefore, are entirely inconsistent with the plaintiff's assertion that the defendants denied many requests for medical treatment between April 1 and May 13, 2009, or that he suffered "substantial harm" from any alleged delay in treatment. See Mendoza v. Lynaugh, supra. Moreover, although the plaintiff asserts that defendant Roundtree ordered a referral for the plaintiff to be seen by an orthopedic specialist, this assertion is entirely conclusory and is not supported by anything in the plaintiff's medical records. Accordingly, on the record before the Court, the Court concludes that the plaintiff's evidence supporting his claim of deliberate medical indifference is "so weak or tenuous" that it could not support a judgment in his favor in connection with this issue. Little v. Liquid Air Corp., supra. The defendants' motion, therefore, should be granted in connection with this issue.

## RECOMMENDATION

It is recommended that the defendants' Motion for Partial Summary

Judgment, rec.doc.no. 80, be granted in part, dismissing the plaintiff's claim of deliberate medical indifference asserted against defendants Jonathan Roundtree, Aurielle Boeker, Mike Thomas and Anthony McCoy, and that this matter be referred back for further proceedings in connection with the plaintiff's claim of excessive force asserted against defendants Huey Pidgeon, Marks Allen, Joseph Russell and Greg Eirick.

Signed in chambers in Baton Rouge, Louisiana, March 9, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**